IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BRANNON ACHIMBI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:24-cv-1507-LKG |
| v. | ) | |
| | ) | Dated: April 30, 2026 |
| OFFICER OWOEYE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM

Pending in this case is a Motion for Summary Judgment filed on behalf of Defendant Officer Adebayo Owoeye. ECF No. 22. Although given an opportunity to do so, self-represented Plaintiff Brannon Achimbi has not filed an opposition to the motion. *See* ECF No. 23. Achimbi has instead requested a pro bono civil attorney. ECF Nos. 24 and 26. The sole basis for Achimbi's requests are that he remains incarcerated and cannot secure counsel on his own. *Id.* The Motion to Strike the Appearance of Bambi Glenn shall be granted. ECF No. 19.

No hearing is required in this matter. *See* D. Md. Local R. 105.6 (2025). For the reasons that follow, Officer Owoeye's Motion for Summary Judgment will be **GRANTED** and Achimbi's requests for pro bono counsel will be **DENIED**.

## I.    Background

### A.    Procedural History

On November 23, 2024, this Court issued a Memorandum and Order denying Defendant's Motion to Dismiss, finding that the asserted defense that Achimbi did not exhaust administrative remedies was without merit as it relied on state law not applicable to federal litigation; and the qualified immunity defense was unsupported by any evidence, such as a declaration, to support the assertion that Owoeye was unaware of Achimbi's injury when he left the area where the incident occurred. ECF No. 13 at 3-4.

This Court noted that exhaustion of administrative remedies is an affirmative defense that requires evidence produced by a defendant that establishes the plaintiff did not utilize an

administrative remedy procedure prior to filing suit. *Id.* at 3, citing 42 U.S.C. § 1997e(a). The fact that Achimbi did not attach proof to his complaint that administrative remedies were exhausted as required by Md. Code Ann., Cts & Jud. Proc. § 5-1003, was inconsequential. *Id.*

With respect to the qualified immunity defense this Court observed that "[l]iberally construed, the complaint asserts that Owoeye walked away when Plaintiff began his pleas to release his finger from the door." ECF No. 13 at 4. In the absence of any evidence disputing it, and assuming that allegation is true, Owoeye was not entitled to qualified immunity. *Id.*

### B.   Complaint Allegations

The Court summarized Achimbi's allegations against Owoeye as follows:

The complaint concerns an incident that occurred on April 21, 2024 at Baltimore County Detention Center. ECF No. 1 at 4. Plaintiff states that as Officer Owoeye was passing out dinner trays on his housing unit, they got into a verbal altercation regarding a mistake that was made on Plaintiff's dinner tray. *Id.* During the argument, Owoeye told Sergeant Elomari that Plaintiff spit on him and Plaintiff was charged with a disciplinary violation because of that claim. *Id.* Sergeant Cordaro served Plaintiff with the ticket charging him with assaulting an officer and Plaintiff states he tried to convince Cordaro that Owoeye had lied about him but to no avail. *Id.* at 5.

After Plaintiff returned to his cell from his recreation period, Owoeye and Officer Neekson came to the housing unit with another inmate. ECF No. 1 at 5. Plaintiff and his cellmate were told to "lock in" so the inmate and the officers could come into the cell. *Id.* Plaintiff's cellmate went out of the cell to shower while Plaintiff remained in the cell. *Id.* at 6. After the inmate, who had just arrived in the housing unit, was locked into his assigned cell, Plaintiff called out to Neekson to be let out of his cell because he had two minutes left on his one-hour recreational walk. *Id.* As he was doing so, Owoeye walked past his door taunting him and asking why he wanted his door opened. *Id.*

While Owoeye went downstairs to retrieve Plaintiff's cellmate, Plaintiff told Neekson to come to his cell. ECF No. 1 at 6. As Owoeye came up the stairs with Plaintiff's cellmate he unclipped his mace can and told Neekson to "watch out." *Id.* When the cell door opened, Plaintiff walked out and Neekson stuck his arm out, telling Plaintiff he could not leave the cell. *Id.* Plaintiff then took issue with Owoeye for leaving trash in front of Plaintiff's cell and Plaintiff's cellmate began arguing with Owoeye while Plaintiff talked to Neekson. *Id.* As Neekson began talking to Plaintiff about his problem, Owoeye slammed the door shut on Plaintiff's finger. *Id.* Although Plaintiff started yelling for the officers to open the door, he was ignored. *Id.* Plaintiff yanked his finger out of the door and when he did so, blood began "gushing" from his finger. *Id.* at 7. Plaintiff states his nail was coming off and his finger was split open. *Id.*

2

Plaintiff's cellmate began kicking the cell door and yelling to get Neekson's attention because Owoeye had left. ECF No. 1 at 7. When Neekson came to the door and saw Plaintiff's finger, he told Plaintiff to put on his "jumper" so he could be taken to medical. *Id.* Although Neekson waived to have the door opened, the door was never opened and Neekson left the area. *Id.* After more kicking of the cell door and yelling, Officer Reynolds came to the cell and rushed Plaintiff to medical for treatment. *Id.* Plaintiff claims he received only pain medication at the detention center and that he waited for a couple of hours before being taken to St. Joseph's Medical Center where he received nine stitches in his finger. *Id.*

ECF No. 13 at 1-2.

### C. Defendant's Response

Owoeye has now provided a declaration explaining the events of April 21, 2024. ECF No. 22-2. He states that on April 21, 2024, he was assigned to Housing Unit 3F to distribute evening meals. *Id.* at 1, ¶ 5. Achimbi was assigned to cell 18. *Id.* When Owoeye opened the food slot in the cell door to deliver Achimbi's meal tray, Achimbi put his arm through the slot and began demanding that Owoeye retrieve something from another cell for him. *Id.* Owoeye refused the request and, instead, gave Achimbi a direct order to remove his arm from the slot. *Id.* Achimbi refused to comply with the order and, according to Owoeye, spit through the slot at Owoeye striking his pants' leg and boot. *Id.* at 2. This incident occurred at approximately 5:40 p.m., and Achimbi was charged with assaulting an employee, interfering with staff, threatening bodily harm, and failure to obey an order. ECF No. 22-3 at 2.

At approximately 9:58 p.m., Owoeye was escorting Achimbi's cellmate back to cell 18, where Achimbi was already locked in. ECF No. 22-2 at 2, ¶ 6, *see also* ECF No. 22-4 at 2 (Shift Narrative). When Owoeye opened the cell door, Achimbi tried to step out of the cell, but Officer Nathaniel Neekson prevented him from doing so. ECF No. 22-2 at 2, ¶ 7. Owoeye recalls that Achimbi was speaking aggressively toward him, referring to the incident that occurred earlier that day and the disciplinary ticket he had received as a result. *Id.* at ¶ 8. According to Owoeye, Achimbi and his cellmate were fully in their cell and facing the front of the door when he closed the door. *Id.* at ¶ 9. He states that he was initially unaware that Achimbi's finger was shut in the door frame, but when he started yelling and banging on the cell door stating that his finger was shut in the door, Owoeye notified his Zone Supervisor via radio of the situation. *Id.* ¶¶ 10, 11. Owoeye states that his Zone Supervisor advised that Officer Reynolds would escort Achimbi to medical and, based on that assurance, Owoeye left the housing unit. *Id.* at ¶ 11.

At 10:32 p.m., Brenda Magaha, a member of the medical staff, made a note that Achimbi had arrived in the medical unit with his "pointer finger" red, bleeding, and swollen after it had been shut in a door. ECF No. 22-5 at 3. Achimbi refused to allow medical staff to clean his finger so they could assess the wound. *Id.* Edna Baffoe-Bonnie, CRNP, also noted that Achimbi came to medical with Officer Reynolds, who was demanding that Achimbi be sent out to the hospital. ECF No. 22-6 at 6. Achimbi threatened Baffoe-Bonnie, stating that "if he was touched, [she] would regret it." *Id.* She writes that "For the safety of the staff, the patient would be sent out to the hospital due to the patient threatening medical staff as well as overheard [sic] the patient telling an officer that he would kill him when he sees him outside." *Id.* An injection of Toradol was given to Achimbi by the charge nurse. *Id.*

The following day, at approximately 8:10 a.m., Achimbi had returned from the hospital where he received nine stitches to his right middle finger. ECF No. 22-6 at 5. The sutures were removed on May 1, 2024, and the wound was observed to be well-healed. *Id.* at 4-5.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting

4

Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.  Analysis

The precise basis for Achimbi's claims is not clearly stated in the complaint. ECF No. 1. Construed liberally, the Court will analyze the complaint as one asserting a claim of excessive force and deliberate indifference to a serious medical need. Because Achimbi was a pretrial detainee at the time of the incident, both claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).

### A.  Excessive Force

The "appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). It is enough that a pretrial detainee shows that the "force purposely or knowingly used against him was objectively unreasonable," *id.*, regardless of an officer's state of mind, *id.* at 395 (cited in *Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016)). Pursuant to *Kingsley*, this Court must consider whether under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene," the force used against Achimbi was objectively excessive. *Kingsley* at 397. This Court must also "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.*, quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979) (brackets in original).

The "force" at issue in this case does not appear to have been used against Achimbi intentionally. Rather, the undisputed fact is that Owoeye was responsible for securing Achimbi's cellmate inside the cell. To do so, the cell door had to be closed. At most, the injury to Achimbi's finger was the result of negligence, which is not an appropriate basis for a constitutional rights violation. The "defendant must possess a purposeful, a knowing, or possibly a reckless state of mind ... because ... 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'" *Kingsley*, 576 U.S. at 396, quoting *County*

*of Sacramento v. Lewis*, 523 U.S. 833, 849 (1988). As such, Owoeye is entitled to summary judgment in his favor on any excessive force claim raised in the complaint.

**B.    Medical Care**

The Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate non punitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 6-8-09 (4th Cir. 2023) "To state a claim of deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611. This means that a pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.*

It is undisputed that Owoeye knew that Achimbi's finger was caught in the door; however, he reported the incident so that assistance could be provided to Achimbi. *See* ECF No. 22-2 at 2, ¶ 11; ECF No. 22-4 at 2. The injury to Achimbi's finger, while painful, did not pose a substantial risk of serious harm requiring Owoeye to address the risk in any other way than he did. Achimbi received emergent medical care for his finger, despite his oppositional behavior toward medical staff, within a reasonable period of time. Owoeye is also entitled to summary judgment on any claim regarding a denial of access to medical care.

**IV.    Conclusion**

For the reasons stated herein, the Motion for Summary Judgment filed on behalf of Defendant Owoeye shall be GRANTED and judgment entered in his favor. Because this matter will not be proceeding to trial, Achimbi's requests for pro bono counsel shall be denied.

A separate Order follows.

April 30, 2026
Date

LYDIA KAY GRIGGSBY
United States District Judge

6